## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CARMEN'S CORNER STORE, a sole
proprietorship; RETAIL4REAL, a sole
proprietorship; and ALTIMONT MARK
WILKS, owner and operator of Carmen's
Corner Store and Retail4Real,

     *Plaintiffs*,

v.

SMALL BUSINESS ADMINISTRATION;
JOVITA CARRANZA, in her official
capacity as Administrator of the Small
Business Administration; STEVEN
MNUCHIN, in his official capacity as
Secretary of the Treasury; and THE
UNITED STATES OF AMERICA,

     *Defendants*.

Civil Action No. _____

**VERIFIED COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

Plaintiffs Carmen's Corner Store, Retail4Real, and Altimont Mark Wilks submit this Complaint for Declaratory Judgment and request for Temporary, Preliminary, and Permanent Injunctive Relief to end invalid and unlawful portions of the Interim Final Rule that the United States Small Business Administration promulgated on April 15, 2020, 85 Fed. Reg. at 20,811. The challenged portions of SBA's Interim Final Rule purport to make certain businesses ineligible for Paycheck Protection Program loans under the CARES Act in contravention of the unambiguous statutory text

and the limited authority that Congress delegated to SBA.  In support of this request, Plaintiffs claim and aver as follows:

**INTRODUCTORY STATEMENT**

The outbreak of COVID-19 and the government's response to that virus have decimated the American economy.  To help mitigate the economic damage and keep small businesses afloat during these unprecedented times, the United States Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") and the Paycheck Protection Program and Health Care Enhancement Act.  Through these laws, Congress made $659,000,000,000 available for small businesses in the form of Paycheck Protection Program ("PPP") loans.  The federal government fully guarantees PPP loans and a recipient of a PPP loan can qualify to have the loan fully forgiven.

Congress tasked the Small Business Administration ("SBA") with promulgating regulations to administer PPP loans to *any* business concern based in the United States with fewer than 500 employees, so long as the small business was in operation on February 15, 2020, and had employees or independent contractors whom the business concern paid.

Mr. Wilks owns two such businesses: Carmen's Corner Store and Retail4Real, both of which are principally located in Hagerstown, Maryland.  But SBA has refused to uphold its statutory duty to make PPP loans available to Mr. Wilks's business.  With no delegation of authority to do so, SBA took it upon itself to exclude certain categories of businesses from eligibility for PPP loans.  One category SBA has excluded is businesses owned by persons with a criminal history.  Mr. Wilks was convicted of a felony in 2004.  But he has since served his time, paid his debt to society, and returned home.  He is now a small business owner, and community leaders throughout Maryland have recognized his successes and contributions to the community.  Nevertheless, SBA has applied its facially invalid regulation to indiscriminately exclude the Plaintiffs from PPP loans that Congress made available to *all* small businesses.

2

Plaintiffs ask this Court to reject SBA's unlawful administrative action and ensure that PPP loans are available to all small businesses as Congress intended, including the Plaintiffs' businesses.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1346, 1361, and 2201.

2.      Additionally, this Court has jurisdiction to review agency action under 5 U.S.C. § 702, which provides, in part: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

3.      And pursuant to 15 U.S.C. § 634(b), jurisdiction is conferred upon any United States District Court to determine controversies against the Administrator of SBA.

4.      This Court has jurisdiction to grant injunctive relief pursuant to 28 U.S.C. § 2202 and Rule 65 of the Federal Rules of Civil Procedure.

5.      Venue is proper in the District of Maryland pursuant to 28 U.S.C. § 1391, as the events giving rise to the Plaintiffs' causes of action arose or exist in this District.

## PARTIES

6.      Plaintiff Carmen's Corner Store is a sole proprietorship owned by Altimont Mark Wilks.  Located in Hagerstown, Maryland, Carmen's Corner Store is a neighborhood convenience store that provides affordable food and non-alcoholic beverages.

7.      Plaintiff Retail4Real is another sole proprietorship that Altimont Mark Wilks owns. Also with its principal place of business in Hagerstown, Maryland, Retail4Real is a logistics business that delivers automotive products.

8.      Plaintiff Altimont Mark Wilks is a resident of Hagerstown, Maryland.  He owns and operates Carmen's Corner Store and Retail4Real.  In 2004, Mr. Wilks was arrested and charged with

felony drug and weapons offenses under both Maryland and federal law. Following guilty pleas, Mr. Wilks served a 10-year sentence for the federal convictions and a five-year consecutive sentence for the state convictions. Mr. Wilks was released on June 14, 2018, at which point he successfully transitioned back into society in Hagerstown, where he resides with his family. Mr. Wilks has maintained consistent for-profit employment and also works with non-profits. *See infra* ¶¶ 18 – 27. Mr. Wilks has become an accepted and successful member of the community since his return. He is set to complete his federal supervision on June 14, 2020; he will remain on parole with the State of Maryland until 2021.

9. Defendant SBA is a federal agency created and authorized pursuant to 15 U.S.C. § 633 *et seq.* SBA maintains a local office in Maryland at 100 S. Charles St. #1201, Baltimore, Maryland 21201.

10. Defendant Jovita Carranza is the Administrator of SBA (the "Administrator"), a Cabinet-level position. She is sued in her official capacity.

11. The Administrator may be sued pursuant to 15 U.S.C. § 634(b) ("In the performance of, and with respect to, the functions, powers, and duties vested in [her] by this chapter the Administrator may … sue and be sued … in any United States district court[.]").

12. Defendant Steven Mnuchin (the "Secretary") is the Secretary of the United States Department of the Treasury ("Treasury"). He is sued in his official capacity.

13. Defendant the United States of America is a sovereign nation dedicated to protecting life, liberty, and property, as provided for in the U.S. Constitution.

## STATEMENT OF FACTS

**A.  Mr. Wilks Started Two Successful Businesses after He Returned to the Community**

14.      Mr. Wilks established Carmen's Corner Store on April 1, 2019.  Mr. Wilks named the store after his mother, Carmen Stanford Wilks, whom Mr. Wilks credits, along with his aunt Patricia Green, with getting him on track to open the business.

15.      Carmen's Corner Store is a convenience store that offers fresh fruits and vegetables, packaged food, soft drinks, and vending machines.

16.      Carmen's Corner Store employs Mr. Wilks full-time as well as another full-time employee and a part-time employee.

17.      The core customers for Carmen's Corner Store come from the nearby schools, restaurant patrons, and daytime downtown businesses.

18.      On July 16, 2019, Carmen's Corner Store held its Grand Opening—a positive event recognized by several community leaders.  *See* Mike Lewis, *New Corner Store in Hagerstown Offers Second Chance*, HeraldMailMedia.com (July 16, 2019), *available at* https://www.heraldmailmedia.com/brightside/new-corner-store-in-hagerstown-offers-a-second-chance/article_9bdfa52e-c68d-53b8-86dd-5859f252a7ce.html.

19.      United States Senator Chris Van Hollen presented Carmen's Corner Store with a citation in celebration of its Grand Opening, "[i]n anticipation of its providing convenient and affordable items and of its becoming a cornerstone of the community, and with best wishes for success."  (A copy of the certificate is attached as Exhibit 1).

20.      Congressman David Trone congratulated Carmen's Corner Store on its Grand Opening and presented a Certificate of Special Congressional Recognition.  (A copy of the certificate is attached as Exhibit 2).

21.     The Maryland General Assembly issued an Official Citation congratulating Carmen's Corner Store and recognizing the Grand Opening.  (A copy of the certificate is attached as Exhibit 3).

22.     The Washington County Board of County Commissioners congratulated Carmen's Corner Store and offered thanks "for investing in the community and in Washington County[.]"  (A copy of the certificate is attached as Exhibit 4).

23.     Mayor Robert E. Bruchey, II, of the City of Hagerstown also offered a special recognition to Carmen's Corner Store "for their investment in [the] community."  (A copy of the certificate is attached as Exhibit 5).  Mayor Bruchey's recognition declared that "Carmen's Corner Store is doing its part to uplift the community and improve the living standards of area families," and helps "make Hagerstown a great place to live, work, and visit[.]"  (Exhibit 5).

24.     The Maryland Small Business Development Center saluted Carmen's Corner Store's "efforts on the success of our nation's dreamers, innovators, and doers[.]"  (A copy of the certificate is attached as Exhibit 6).

25.     The positive recognition of Carmen's Corner Store's work in the community did not end with its Grand Opening.

26.     An article in the *Herald Mail* on December 25, 2019, recognized Carmen's Corner Store for handing out free holiday meals and gift bags to those in need.  Sherry Greenfield, *Hagerstown's Needy Line Up for Free Christmas Dinner and Treats*, HeraldMailMedia.com (Dec. 25, 2019), *available at* https://www.heraldmailmedia.com/instant/hagerstown-s-needy-line-up-for-free-christmas-dinner-and/article_50a5f758-276f-11ea-bc99-cf8fc49d75b9.html.

27.     On January 22, 2020, Congressman Trone presented Mr. Wilks with a Certificate of Congressional Recognition, which recognized Mr. Wilks as a member of the inaugural graduating class of Knowledge Empowers You (K.E.Y.).  (A copy of the certificate and newspaper article recognizing

the achievement are attached as Exhibit 7).  K.E.Y. is "a new program that teaches ex-offenders to become entrepreneurs in Hagerstown."  (Exhibit 7).

28.     Mr. Wilks owns a second sole proprietorship: Retail4Real.

29.     Mr. Wilks first established Retail4Real in 2002 before his arrest, and he later reestablished the business in 2018 after he returned home.

30.     Retail4Real is a logistics company that trains ex-offenders to become bondable, dependable delivery drivers for auto-part supply retailers and automotive dealerships in Maryland, Washington, D.C., and Pennsylvania.

31.     On March 17, 2020, Carmen's Corner Store closed temporarily in response to the COVID-19 pandemic.  With local schools, restaurants, and retail stores closed or struggling due to COVID-19 and Governor Hogan's executive orders, Carmen's Corner Store's business had decreased too significantly to remain open.

32.     Similarly, Retail4Real has experienced a significant decline in business due to the COVID-19 pandemic, executive orders, and economic downturn.  Retailers of automotive parts have had to cut back on their supply-chain contracts with Retail4Real and other independent contractors.

### B.  COVID-19, States of Emergency, and the Economic Collapse

33.     The health and economic impacts of COVID-19 and the resulting executive orders have been documented thoroughly.

34.     "In response to the COVID-19 pandemic, on March 5, 2020, Governor Larry Hogan issued a Proclamation of Catastrophic Health Emergency, which declared a state of emergency in Maryland, and which was renewed on March 17, 2020, April 10, 2020, and May 6, 2020.  The Governor also issued a series of executive orders prohibiting gatherings of certain numbers of people and ordering the closure of certain businesses, referred to as 'stay at home' orders."  *Antietam Battlefield KOA v. Hogan*, No. CV CCB-20-1130, 2020 WL 2556496, at *2 (D. Md. May 20, 2020).

35.     As of June 4, 2020, at least 42,600,000 people have filed for unemployment benefits since the COVID-19 pandemic hit the United States, with 1,877,000 new claims filed the week of June 1, 2020.  Jeff Cox, *Jobless Claims, Total Unemployment Level Worse Than Expected*, CNBC (June 4, 2020, 9:39 AM), *available at* https://www.cnbc.com/2020/06/04/weekly-jobless-claims.html.

## C.  Congress Required SBA to Administer PPP Loans Based on Only Two Considerations

36.     To address the economic downturn related to COVID-19, Congress passed the CARES Act, which President Donald J. Trump signed into law on March 27, 2020.  CARES Act, Pub. L. 116-136, 134 Stat. 281 (2020).

37.     Among other things, the CARES Act added a new, temporary product to SBA's 7(a) loan program called the PPP.  *Id.* § 1102.

38.     Specifically, Section 1102 amended 15 U.S.C. § 636(a) by adding subsection "(36) Paycheck Protection Program."  *Id.*

39.     The CARES Act made $349,000,000,000 available in "general business loans authorized under section 7(a) of the Small Business Act (15 U.S.C. 636(a)), including [PPP] loans made under paragraph (36) of such section, as added by subsection (a)[.]"  *Id.* § 1102(b)(1).

40.     Congress established PPP loans to "provide economic relief to small businesses nationwide adversely impacted under the COVID-19 Emergency Declaration issued by President Trump on March 13, 2020."  Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. at 20,811 (Apr. 15, 2020) (to be codified at 13 C.F.R. 120).

41.     Congress would later pass the Paycheck Protection Program and Health Care Enhancement Act on April 24, 2020, which amended the CARES Act by increasing the funds available for PPP loans to $659,000,000,000.  Pub. L. No. 116-139, § 101(a)(1).

42.     To determine how much money a business may borrow, Congress created a payroll-based formula but capped the amount a business may borrow at $10,000,000.   CARES Act § 1102(a)(2)(36)(E).

43.     Section 1102 of the CARES Act temporarily permits SBA to guarantee 100 percent of PPP loans; section 1106, meanwhile, provides for loan forgiveness up to the full principal amount of qualifying loans guaranteed under PPP.  *Id.* §§ 1102, 1106(b)).

44.     A recipient can use a PPP loan to help cover the following costs:

a.      Payroll;

b.      Group healthcare benefits during periods of paid sick, medical, or family leave, and insurance premiums;

c.      Employee salaries, commissions, or similar compensations;

d.      Interest payments on a mortgage obligation (but not including any prepayment of or payment of principal toward a mortgage obligation;

e.      Rent (including rent under a lease agreement);

f.      Utilities; and

g.      Interest on any other debt obligations that the business incurred before the covered period.

*Id.* § 1102(a)(2)(F)(i).

45.     The CARES Act instructed SBA to promulgate rules and administer the PPP.  *Id.* § 1102.

46.     Section 1114 provided SBA with emergency rulemaking authority: "Not later than 15 days after the date of the enactment of this Act, the Administrator shall issue regulations to carry out this title and the amendments made by this title without regard to the notice requirements under section 533(b) of title 5, United States Code."  *Id.* § 1114.

47.     The CARES Act declares that, "in addition to small business concerns, *any business concern*, nonprofit organization, veterans organization, or Tribal business concern described in section 31(b)(2)(C) shall be eligible to receive a covered loan," so long as the business employs 500 or fewer employees or, "if applicable," employs less than "the size standard in number of employees established by the Administration for the industry in which the business concern … operates."    *Id.* § 1102(a)(1)(B)(2)(D)(i) (emphasis added).   Sole proprietorships and independent contractors are eligible for PPP loans.   *Id.* § 1102(a)(2)(36)(D)(ii)(I).

48.     In recognition that SBA traditionally declared some classes of businesses ineligible for SBA loans, Congress included a section in the PPP entitled, "Increased Eligibility for Certain Small Businesses and Organizations."  15 U.S.C. § 636(a)(36)(D).

49.     To accomplish this increase in eligibility, Section 1102 amended 15 U.S.C. § 636(a)(36)(F)(ii) to limit the considerations on which SBA can base eligibility for a PPP loan guarantee.   *See* CARES Act § 1102.

50.     SBA may consider only two factors in determining PPP loan eligibility: whether a borrower "(aa) was in operation on February 15, 2020; and (bb)(AA) had employees for whom the borrower paid salaries and payroll taxes; or (BB) paid independent contractors, as reported on a Form 1099-MISC."  15 U.S.C. § 636(a)(36)(F)(ii)(II).

51.     "While Congress may once have been willing to permit the SBA to exclude these businesses from its (the SBA's) lending programs, that willingness evaporated when the COVID-19 pandemic destroyed the economy and threw tens of millions of Americans out of work.  Simply put, Congress did not pick winners and losers in the PPP.  Instead, through the PPP, Congress provided temporary paycheck support to *all* Americans employed by *all* small businesses that satisfied the two eligibility requirements—even businesses that may have been disfavored during normal times.  Thus,

the SBA's PPP Ineligibility Rule is invalid because it contravenes the PPP." *DV Diamond Club of Flint, LLC v. U.S. Small Bus. Admin.*, No. 20-CV-10899, 2020 WL 2315880, at *1 (E.D. Mich. May 11, 2020).

52.     The CARES Act also includes a "catch-all" provision to prevent SBA from applying its ineligibility rules to PPP loans:

> Neither may the SBA continue to apply these rules pursuant to § 636(a)(36)(B), which states: "Except as otherwise provided in this paragraph, the [SBA] may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection." 15 U.S.C. § 636(a)(36)(B). This provision likely constitutes a catch-all governing procedures otherwise unaffected by the mandate of the CARES Act and the PPP and does not detract from the broad grant of eligibility.

*DV Diamond Club*, 2020 WL 2988528, at *2 (6th Cir. May 15, 2020).

### D.  SBA Promulgated an Interim Final Rule that Exceeded Its Statutory Grant of Authority

53.     As required by the PPP provisions of the CARES Act, SBA first promulgated an interim final rule on April 2, 2020.  Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. at 20,811.

54.     SBA posted additional interim final rules on its PPP loans on April 3, 15, 24, 28, and 30, and May 5, 8, 19, and 26, 2020, and the Department of the Treasury posted an additional interim final rule on April 28, 2020.  *See* Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. at 20,811; Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. at 20,817 (Apr. 15, 2020) (to be codified at 13 C.F.R. pt. 121); Business Loan Program Temporary Changes; Paycheck Protection Program-Additional Eligibility Criteria and Requirements for Certain Pledges of Loans, 85 Fed. Reg. at 21,747 (Apr. 20, 2020) (to be codified at 13 C.F.R. pt. 120); Business Loan Program Temporary Changes; Paycheck Protection Program-Requirements-Promissory Notes, Authorizations, Affiliation, and Eligibility, 85 Fed. Reg. at 23,450 (Apr. 28, 2020) (to be codified at 13 C.F.R. pt. 120, 121); Small Business Administration Business Loan Program Temporary Changes; Paycheck Protection Program—Additional Criterion for Seasonal

Employers, 85 Fed. Reg. at 23,917 (Apr. 30, 2020) (to be codified at 13 C.F.R. pt. 120); Business Loan Program Temporary Changes; Paycheck Protection Program-Requirements-Disbursements, 85 Fed. Reg. at 26,321 (May 4, 2020) (to be codified at 13 C.F.R. pt. 120); Business Loan Program Temporary Changes; Paycheck Protection Program-Requirements-Corporate Groups and Non-Bank and Non-Insured Depository Institution Lenders, 85 Fed. Reg. at 26,324 (May 4, 2020) (to be codified at 13 C.F.R. pt. 120); Business Loan Program Temporary Changes; Paycheck Protection Program-Nondiscrimination and Additional Eligibility Criteria, 85 Fed. Reg. at 27,287 (May 8, 2020) (to be codified at 13 C.F.R. pt. 113, 120); Business Loan Program Temporary Changes; Paycheck Protection Program-Requirements-Extension of Limited Safe Harbor With Respect to Certification Concerning Need for PPP Loan Request, 85 Fed. Reg. at 29,845 (May 19, 2020) (to be codified at 13 C.F.R. pt. 120); Business Loan Program Temporary Changes; Paycheck Protection Program-Loan Increases, 85 Fed. Reg. at 29,842 (May 19, 2020) (to be codified at 13 C.F.R. pt. 120); Business Loan Program Temporary Changes; Paycheck Protection Program-Eligibility of Certain Electric Cooperatives, Fed. Reg. at 29,847 (May 19, 2020) (to be codified at 13 C.F.R. pt. 120); Business Loan Program Temporary Changes; Paycheck Protection Program-Treatment of Entities With Foreign Affiliations, Fed. Reg. at 30,835 (May 21, 2020) (to be codified at 13 C.F.R. pt. 120, 121); Business Loan Program Temporary Changes; Paycheck Protection Program-Second Extension of Limited Safe Harbor With Respect to Certification Concerning Need for PPP Loan and Lender Reporting, 85 Fed. Reg. at 31,357 (May 26, 2020) (to be codified at 13 C.F.R. pt. 120).

55.     The focus of this lawsuit is SBA's interim final rule that became effective on April 15, 2020.  Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. at 20,811 ("Interim Final Rule").  The Interim Final Rule implemented sections 1102 and 1106 of the CARES Act, and "applies to applications submitted under the Paycheck Protection Program through June 30, 2020, or until funds made available for this purpose are exhausted." *Id.*

56.     SBA recognized the expediency with which Congress wanted PPP loans administered and sought to limit discretion and delay in the lending process by authorizing lenders, which act as SBA's delegatees.  *See* 15 U.S.C. § 636(a)(36)(F)(iii).  The Interim Final Rule instructed lenders to issue loans in reliance on a borrower's certifications that the borrower is eligible for a PPP loan.  *Id.*

57.     The Interim Rule listed businesses eligible for PPP loans.  SBA's list largely tracked the criteria set out in the CARES Act:

> You are eligible for a PPP loan if you have 500 or fewer employees whose principal place of residence is in the United States, or are a business that operates in a certain industry and meet the applicable SBA employee-based size standards for that industry, and:
> i. You are:
> A. A small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632), and subject to SBA's affiliation rules under 13 CFR 121.301(f) unless specifically waived in the Act; or
> B. A tax-exempt nonprofit organization described in section 501(c)(3) of the Internal Revenue Code (IRC), a tax-exempt veterans organization described in section 501(c)(19) of the IRC, Tribal business concern described in section 31(b)(2)(C) of the Small Business Act, or any other business; and
> ii. You were in operation on February 15, 2020 and either had employees for whom you paid salaries and payroll taxes or paid independent contractors, as reported on a Form 1099–MISC.
> You are also eligible for a PPP loan if you are an individual who operates under a sole proprietorship or as an independent contractor or eligible self-employed individual, and you were in operation on February 15, 2020.
> You must also submit such documentation as is necessary to establish eligibility such as payroll processor records, payroll tax filings, or Form 1099–MISC, or income and expenses from a sole proprietorship. For borrowers that do not have any such documentation, the borrower must provide other supporting documentation, such as bank records, sufficient to demonstrate the qualifying payroll amount.

*Id.* at 20,812.

58.     But SBA did not stop there.  Continuing beyond the text of the CARES Act, SBA posed the question, "Could I be ineligible *even if I meet the eligibility requirements* in (a) above?"  *Id.* (emphasis added).

59.     Rather than answering "no," as the CARES Act required, SBA included a non-exhaustive list of businesses that SBA deemed ineligible for PPP by the Interim Final Rule.  This

lawsuit focuses on the businesses deemed ineligible by Section III.b.2.iii (the "Criminal History Rule")

of the Interim Final Rule:

> You are ineligible for a PPP loan if, for example:
> i. You are engaged in any activity that is illegal under Federal, state, or local law;
> ii. You are a household employer (individuals who employ household employees such as nannies or housekeepers);
> iii. **An owner of 20 percent or more of the equity of the applicant is incarcerated, on probation, on parole; presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction; or has been convicted of a felony within the last five years**; or
> iv. You, or any business owned or controlled by you or any of your owners, has ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted within the last seven years and caused a loss to the government.
> The Administrator, in consultation with the Secretary of the Treasury (the Secretary), determined that household employers are ineligible because they are not businesses. 13 CFR 120.100.
> * * *
> Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible. (SOP 50 10 can be found at https://www.sba.gov/document/sop-50-10-5-lenderdevelopment-company-loan-programs.).

*Id.* (emphasis added).

60.     Referenced in the Interim Final Rule, 13 C.F.R. 120.110 provides in relevant part: "The

following businesses are ineligible [for SBA business loans]: … Businesses with an Associate who is

incarcerated, on probation, on parole, or has been indicted for a felony or crime of moral turpitude."

13 C.F.R. § 120.110(n).

61.     Although SBA recognized that "the intent of the [CARES] Act is to provide relief to

America's small businesses expeditiously" and to "provide immediate assistance to individuals,

families, and businesses affected by the COVID-19 emergency[,]" 85 Fed. Reg. at 20,811-12, SBA's

Interim Final Rule is counter to that purpose and beyond the authority that Congress delegated to

SBA in the CARES Act.

62.     Through its passage of the CARES Act, Congress did not delegate to SBA the authority to determine who is and is not morally worthy of a PPP loan.  *See DV Diamond Club*, 2020 WL 2988528, at *2 (6th Cir. May 15, 2020) ("[T]he Act's specification that 'any business concern' is eligible, so long as it meets the size criteria, is a reasonable interpretation.  That broad interpretation also comports with Congress's intent to provide support to as many displaced American workers as possible and, in doing so, does not lead to an "absurd result" as the SBA claims. Finally, by specifying 'any business concern,' Congress made clear that the SBA's longstanding ineligibility rules are inapplicable given the current circumstances.").

63.     Even if Congress had delegated that power to SBA, the Interim Final Rule is an arbitrary and capricious exercise of that power.  *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 293 (4th Cir. 2018) (describing arbitrary-and-capricious agency action as when "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.") (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)).

64.     On Friday April 3, 2020, SBA issued additional guidance in which it exempted church organizations from SBA's affiliation rules that had made some churches ineligible for PPP loans under SBA's regulations.  Affiliate Rules for Paycheck Protection Program, 85 Fed Reg. at 20,817 (Apr. 3, 2020) (to be codified at 13 C.F.R. pt. 121).

65.     SBA typically refuses to make its loans available to "[b]usinesses principally engaged in teaching, instructing, counseling or indoctrinating religion or religious beliefs, whether in a religious or secular setting[.]"  13 C.F.R. § 120.110(k).

66.    The Administrator announced that SBA made the change because it did not have a compelling interest "in denying emergency assistance to faith-based organizations that are facing *the same economic hardship to which the CARES Act responded* and who would be eligible for PPP but for their faith-based organizational and associational decisions." Affiliate Rules for Paycheck Protection Program, 85 Fed Reg. at 20819 (emphasis added).

67.    The Administrator failed to explain why SBA determined it should grant PPP eligibility to some businesses typically excluded by 13 C.F.R. § 120.110 but not do the same for persons with a criminal record.

68.    On April 6, 2020, eleven members of Congress wrote a letter to Secretary Mnuchin and Administrator Carranza, informing them that the Interim Final Rule "contains many restrictions that were not only not included in the CARES Act," but that "were not intended by Congress at all." (A copy of the letter is attached as Exhibit 8).

69.    Specifically referring to the Criminal History Rule, the Members of Congress informed Defendants Mnuchin and Carranza that those restrictions on PPP loans were "contrary to law, public policy, and common sense." (Exhibit 8).

70.    The letter concluded as follows:

> The Paycheck Protection Program was designed by Congress to give all small businesses a lifeline. **The employees of the formerly incarcerated are just as entitled to remaining on payroll as other Americans.** The CARES Act was designed to take care of ALL Americans. We hope you will update the regulations to reflect that.

(Exhibit 8) (emphasis added).

71.    Senators Rob Portman and Benjamin L. Cardin, in a show of bipartisan opposition to the Criminal History Rule, also sent a letter to Defendants Mnuchin and Carranza on April 30, 2020. (A copy of the letter is attached as Exhibit 9).

72.     In their letter, Senators Portman and Cardin requested that SBA "revise its Interim Final Rule … so that it properly reflects Congress's and the Administration's support for second chances following a record of bipartisan criminal justice reforms in Congress dating back more than a decade."  (Exhibit 9, p. 1).

73.     According to the Senators, the "new restrictions" that Defendants "placed upon small businesses with partial owners who have been involved in the criminal justice system will only hurt the economy, and further diminish the workforce and the tax base they generate."  (Exhibit 9, p. 1).

74.     The Senators were clear that the Criminal History Rule was counter to Congress's purpose in enacting the CARES Act and the PPP:

> Through the *CARES Act*, and specifically the PPP, Congress sought to ensure that emergency relief is made available to small businesses that have been negatively impacted by this pandemic. **This relief was not intended to exclude business owner[s] who have made mistakes, paid their debt, and turned their lives around.** Rather, it was intended to provide a bridge to hard-working American small business owners who are keeping people employed and supporting the essential services that benefit all of us during this unprecedented crisis.

(Exhibit 9, p. 2) (emphasis added).

75.     In closing, Senators Portman and Cardin urged SBA to "revise this harmful, exclusionary Interim Final Rule so that more businesses are eligible for emergency relief, and ensure that SBA rules support second chances, a stronger economy, and safer communities across all of its programs[.]"  (Exhibit 9, p. 2).

76.     In yet another letter from Congress, 66 Members of Congress and 23 Senators reiterated to Defendants Mnuchin and Carranza that the Criminal History Rule was counter to the purpose of the CARES Act.  (A copy of the letter is attached as Exhibit 10).

77.     Although the main focus of the letter was the difficulties that minority-owned businesses were facing in acquiring PPP loans, the letter also objected to SBA's "troubling" decision to "exclude[] applicants with criminal history" from the PPP loan process.  (Exhibit 10, p. 2).

78.     Despite repeated and bipartisan urging from the very legislators who wrote and passed the CARES Act, asking SBA to stop denying PPP loans based on the Criminal History Rule, Defendants inexplicably continue to do so.

### E. SBA's Unlawful Denial of PPP Loans to the Plaintiffs' Businesses

79.     As a direct and proximate cause of COVID-19 and the related executive orders and economic downturn, Carmen's Corner Store and Retail4Real have suffered significant business losses.

80.     In order to mitigate financial losses and stabilize its business in the face of retailers' reducing contracts for automotive parts, Retail4Real determined to apply for a PPP loan.

81.     On April 8, 2020, Mr. Wilks submitted an application for a $10,000 PPP loan to AmeriServ Bank in Hagerstown, Maryland.

82.     Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), AmeriServ operates as a delegatee of SBA in the processing and approval or denial of the PPP loan that Retail4Real sought.

83.     Retail4Real is fully qualified under the text of the CARES Act to receive a PPP loan.

84.     Retail4Real intended and still intends to use the funds from a PPP loan in accordance with the PPP provisions of the CARES Act.

85.     The Paycheck Protection Program Application Form that Mr. Wilks completed included several questions.  (A copy of the PPP Application is attached as Exhibit 11).  Central to this lawsuit, are questions 5 and 6:

a.     "5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?"

b.     "6. Within the last 5 years, for any felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4)

18

been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)?"

(Exhibit 11).

86.     The application states explicitly, "*If questions (5) or (6) are answered "Yes," the loan will not be approved.*"  (Exhibit 11) (emphasis in original).

87.     On April 13, 2020, Carmen S. Fox, an Assistant Vice President of AmeriServ Financial Bank in Hagerstown, spoke with Mr. Wilks to inform him that his loan would be rejected due to his answers to questions 5 and 6.

88.     Ms. Fox also provided Mr. Wilks a copy of a document that explained that businesses are

> ineligible if an owner of 20 percent or more of the equity of the applicant is presently incarcerated, on probation, on parole; subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction; or within the last five years, for any felony, has been convicted; pleaded guilty; pleaded nolo contendere; been placed on pretrial diversion; or been placed on any form of parole or probation (including probation before judgment).

(A copy of the document Ms. Fox sent to Mr. Wilks is attached as Exhibit 12) (underlining in original).

89.     Following their conversation, Mr. Wilks forwarded Ms. Fox a copy of the letter from eleven Congressmen to Defendants Carranza and Mnuchin (*supra* ¶ 68; Exhibit 8) and asked that AmeriServ not deny his loan "because of a provision that shouldn't exist in th[e] application process." (A copy of Mr. Wilks's email correspondence with Ms. Fox is attached as Exhibit 13, with permission from Ms. Fox).  Ms. Fox thanked Mr. Wilks and said she would forward the letter to AmeriServ Bank Vice President George Chaney.  *Id.*

90.     To this day, Mr. Wilks has not received a PPP loan for Retail4Real; although, he is uncertain whether AmeriServ processed his application or denied him outright based on his response to questions 5 and 6.

91.     Mr. Wilks correctly filled out the application completely and included all necessary documents.  And Retail4Real meets the considerations set out in the CARES Act, Pub. L. No. 116-136, § 1102(a)(2)(F)(i), 134 Stat. 281 (2020).

92.     As a direct and proximate cause of COVID-19 and Governor Hogan's executive orders, Carmen's Corner Store has suffered significant business losses but plans to reopen when it is safe to do so.

93.     To mitigate losses and pay rent and the salaries of its out-of-work employees during the closure, Carmen's Corner Store determined it should apply for a PPP loan in the amount of $21,500 to cover employee salaries and rent.

94.     Carmen's Corner Store is fully qualified under the text of the CARES Act to receive a PPP loan.

95.     Carmen's Corner Store intended and still intends to use the funds from a PPP loan in accordance with the PPP provisions of the CARES Act.

96.     The PPP loan application, however, indicates expressly that Carmen's Corner Store is ineligible for a PPP loan based on questions 5 and 6.   Given that AmeriServ, as SBA's delegatee, denied or refused to process Retail4Real's PPP loan application based on those questions, it is clear that the Defendants would also deny a PPP loan to Carmen's Corner Store.

97.     Even without the explicit statement on the PPP loan application that loans will be denied for answering questions 5 and 6 affirmatively, Plaintiffs believe that SBA would deny PPP loan applications from Retail4Real and Carmen's Corner Store based on 13 C.F.R. § 120.110(n), which has no applicability to PPP loans.

**F. SBA's Criminal History Rule of the Interim Final Rule Is Unlawful**

98. Like most other small businesses affected by this historic economic downturn, Carmen's Corner Store and Retail4Real need financial assistance and loan forgiveness in order to survive.

99. The CARES Act provided for PPP loans to assist small businesses financially while they suffer a significant drop in trade and income as a result of the historic economic downturn that resulted from COVID-19 and the government's attempts to combat that virus.

100. The plain text of the CARES Act is clear and unambiguous as to which businesses are eligible for PPP loans.

101. Because the CARES Act makes unambiguously clear which businesses are eligible for PPP loans, SBA lacked authority to promulgate the Criminal History Rule.

102. The Criminal History Rule, which purports to restrict or clarify which businesses are eligible for PPP loans, is short of statutory right and unlawful as it is contrary to the text of the CARES Act and beyond the specific authority that Congress delegated to SBA through the CARES Act. *See City of Arlington, Tex. v. FCC*, 596 U.S. 290, 307 (2013) (explaining that a rule that exceeds an agency's statutory grant of authority is without legal basis and, therefore, is unlawful).

103. SBA's Criminal History Rule has resulted in the Plaintiffs' ineligibility for PPP loans that the Plaintiffs are otherwise qualified for under the plain text of the CARES Act.

**G. The Plaintiffs Have Experienced, and Will Continue to Experience, Concrete and Particularized Harm as a Direct Result of the SBA's Ineligibility Section Without Injunctive Relief**

104. As a direct result of SBA's Criminal History Rule, and the Defendants' and their delegatee's application of that rule against the Plaintiffs, the Plaintiffs and their employees have suffered and will continue to suffer irreparable injuries including but not limited to financial ruin and business ruination.

105.    Without a court order, Plaintiffs will remain unable to obtain a PPP loan as Congress provided for in the CARES Act.

106.    The funds allocated for PPP are being granted on a first-come, first-served basis until SBA dispenses the funds.  13 C.F.R. § 120.

107.    Considering the pressures and workload that the CARES Act and the COVID-19 pandemic have placed on SBA, the Plaintiffs reasonably fear that the PPP funds will be exhausted before Plaintiffs could appeal SBA's decision.

108.    There is no time for the Plaintiffs to obtain relief, without the urgent aid of an order by this Court, while PPP funds still remain.

109.    If the Plaintiffs remain unable to obtain PPP loans, they may lack the staff and financial resources to reopen following the COVID-19 pandemic, which would cause permanent damage to businesses that have been a success story in the Hagerstown community.

110.    The Plaintiffs' businesses will be in a dire financial condition and risk being unable to regain the success they enjoyed before the pandemic-related economic downturn.

111.    As a direct and proximate result of the Criminal History Rule portion of the Interim Final Rule, the Defendants and their delegatees have caused Plaintiffs and their employees irreparable harm including but not limited to financial ruin and business ruination.

112.    The Plaintiffs have been damaged and will continue to be damaged irreparably by Defendants' conduct.  No adequate remedy at law is available that could compensate Plaintiffs for their damages.

113.    The hardship that the Plaintiffs will experience greatly exceeds any hardship that the Defendants will incur by having to fulfill their statutory duty of administering PPP loans to *all* small businesses who meet the conditions set out in the CARES Act rather than only those businesses that the Defendants have arbitrarily declared ineligible.  Any marginal increase in the cost of the PPP

program will be negligible at best and pales in comparison to the very real cost that the Plaintiffs have felt and continue to feel.

114.    The public interest also favors granting injunctive relief as requested by the Plaintiffs. The Hagerstown community has benefited from Mr. Wilks's reintegration to the community and from his generosity, as the community has also benefited from the generosity and success of the Plaintiffs' businesses.  By passing the CARES Act, Congress reflected the public's will that providing PPP loans to all businesses reflects this public interest.  The three separate letters from legislators to SBA make the public's interest clear.

115.    The Plaintiffs are entitled to declaratory and urgent injunctive relief invalidating and restraining enforcement of the Challenged Portions of the Interim Final Rule.   *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (setting out the elements for permanent injunctive relief).

## COUNT I: INVALID AGENCY ACTION
### THE CRIMINAL HISTORY RULE OF SBA'S INTERIM FINAL RULE
### CONTRAVENES THE PLAIN TEXT OF THE CARES ACT

116.    Plaintiffs reallege and incorporate by reference the allegations contained in their Introductory Statement and paragraphs 1 through 115, as if fully set forth herein.

117.    A court reviewing an agency action "shall hold unlawful and set aside" any action "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

118.    The text of the CARES Act is clear and unambiguous as to which businesses are eligible for PPP loans.

119.    Because the statute was clear and unambiguous, SBA lacked authority to promulgate regulations that restricted or otherwise "clarified" which businesses are eligible for PPP loans.  *See DV Diamond Club*, 2020 WL 2988528, at *2 (6th Cir. May 15, 2020) ("[T]he Act's specification that 'any

business concern' is eligible, so long as it meets the size criteria, is a reasonable interpretation.   That broad interpretation also comports with Congress's intent to provide support to as many displaced American workers as possible and, in doing so, does not lead to an "absurd result" as the SBA claims. Finally, by specifying 'any business concern,' Congress made clear that the SBA's longstanding ineligibility rules are inapplicable given the current circumstances."); *DV Diamond Club*, 2020 WL 2315880, at *1 (E.D. Mich. May 11, 2020) ("SBA's PPP Ineligibility Rule is invalid because it contravenes the PPP."); *Camelot Banquet Rooms*, 2020 WL 2088637, at *5, *7 (W.D. Wis. May 1, 2020) ("[O]ne can find nothing in either the CARES Act or the Small Business Act to suggest that Congress wanted to exclude the plaintiffs from the PPP because of the nature of their business." … "[G]iven Congress's clear intent to extent PPP loans to all small businesses affected by the pandemic … it seems highly unlikely that Congress intended the SBA to apply its exclusion to the PPP.").

120.     Congress did not delegate authority to SBA to create classes of persons to exclude from PPP loans.

121.     Even if the CARES Act were ambiguous—which it is not—the Criminal History Rule would still be unlawful.

122.     SBA's Criminal History Rule is "contrary to the statute" and not entitled to deference. *See United States v. Mead Corp.* 533 U.S. 218, 227 (2001).  SBA is not entitled to deference because the Criminal History Rule is not "a reasonable policy choice for the agency to make." *Chevron, U.S.A., Inc. v. Nat'l Resources Def. Council, Inc.*, 467 U.S. 837, 845 (1984).

123.     More generally, administrative agencies are not entitled to deference.  Article III of the Constitution vests "the judicial power of the United States" in the courts and creates the judicial office held by "[t]he judges, both of the Supreme Court and inferior courts."  U.S. CONST. art. III, § 1. The judicial power includes the authority to decide cases and controversies; a judge's office includes a duty to exercise independent judgment in the interpretation and application of law in each case.  *See Marbury*

*v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) ("It is emphatically the duty of the Judicial Department to say what the law is.  Those who apply the rule to particular cases must, of necessity, expound and interpret that rule.").

124.    The judicial office requires judges to "exercise independent judgment in accord with the law."  PHILIP HAMBURGER, IS ADMINISTRATIVE LAW UNLAWFUL? 173 (2014).

125.    Judicial deference to the agency's interpretation would display bias toward SBA, the government litigant in this case.  *See Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980) (explaining that a neutral judiciary "safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process").

126.    The Plaintiffs' reading of the CARES Act is more consistent with Congress's purpose in providing for PPP loans in that Congress made PPP loans available to *all* business concerns that meet the considerations set out in the CARES Act, Pub. L. No. 116-136, § 1102(a)(2)(F)(i), 134 Stat. 281 (2020); *see also See DV Diamond Club*, 2020 WL 2988528, at *2 (6th Cir. May 15, 2020).

127.    The Criminal History Rule was promulgated in excess of the statutory limitations on SBA's authority to promulgate rules to administer PPP loans.  *See* 5 U.S.C. § 706(2)(C).

128.    As a direct and proximate result of the invalid portions of the Interim Final Rule, the Defendants and their delegatee have caused Plaintiffs and their employees irreparable harm including but not limited to financial ruin and business ruination.

129.    The Plaintiffs have been damaged and will continue to be damaged by Defendants' conduct.  No adequate remedy at law is available that could compensate Plaintiffs for their damages.

130.    The Plaintiffs are entitled to declaratory and injunctive relief invalidating and restraining enforcement of the Criminal History Rules of the Interim Final Rule.

COUNT II: INVALID AGENCY ACTION
THE CRIMINAL HISTORY RULE OF THE INTERIM FINAL RULE IS ARBITRARY AND CAPRICIOUS

131.     Plaintiffs reallege and incorporate by reference the allegations contained in their Introductory Statement and paragraphs 1 through 115, as if fully set forth herein.

132.     A court reviewing must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"   *Mayor & City Council of Baltimore v. Azar*, No. CV RDB-19-1103, 2020 WL 1873947, at *3 (D. Md. Apr. 15, 2020) (quoting 5 U.S.C. § 706(2)(A)).

133.     An agency's action "is arbitrary and capricious if 'the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"   *J.O.P. v. U.S. Dep't of Homeland Sec.*, No. GJH-19-1944, 2020 WL 2932922, at *18 (D. Md. June 3, 2020) (quoting *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 293 (4th Cir. 2018)).

134.     "[A] court must "conduct a 'searching and careful' review to determine whether the agency's decision 'was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'"   *Friends of Capital Crescent Trail v. U.S. Army Corps of Engineers*, No. CV JKB-19-106, 2020 WL 1849704, at *5 (D. Md. Apr. 13, 2020) (quoting *Sierra Club*, 899 F.3d at 270).

135.     A facial review of SBA's Criminal History Rule proves that the rule is arbitrary and capricious.  Congress did not intend for SBA "to exclude business owner[s] who have made mistakes, paid their debt, and turned their lives around." (Exhibit 9, p. 2).  Because the purpose of the PPP was to provide relief to *all* small businesses negatively impacted by the pandemic, Congress included only two criteria for PPP eligibility.  Yet, in promulgating the Criminal History Rule, SBA failed to rely on the factors that Congress established.  In doing so, SBA excluded certain categories of businesses in

complete disregard of the important problem that Congress tried to solve: making favorable loans available to *all* small businesses expeditiously in a time of national economic turmoil.

136.    The Criminal History Rule was not a product of SBA's expertise because Congress did not call on SBA's expertise; instead, Congress instructed SBA to administer PPP loans based on the considerations enumerated in the CARES Act.  SBA departed from the text of the law and, in doing so, failed entirely to consider the problem Congress sought to address.  *See J.O.P.*, 2020 WL 2932922, at *18.

137.    SBA and its delegatees acted arbitrarily and capriciously when they applied the Criminal History Rule to Plaintiffs, determined that Plaintiffs are ineligible for PPP loans, and denied Retail4Real's application.  Given that Plaintiffs meet all the statutory criteria for PPP loans, no non-arbitrary reason exists to exclude Carmen's Corner Store or Retail4Real from the group of "*any* business concerns" that Congress sought to benefit through PPP.  CARES Act, Pub. L. No. 116-136, § 1102(a)(1)(B)(2)(D)(i), 134 Stat. 281 (2020) (emphasis added).

138.    SBA's actions since promulgating the Criminal History Rule demonstrate just how arbitrarily and capriciously the agency has acted. As mentioned above, ¶¶ 64 – 67, SBA exempted from its Criminal History Rule some businesses typically excluded from SBA loans by 13 C.F.R. § 120.110 but not others.  SBA declared that there was no compelling interest "in denying emergency assistance to faith-based organizations that are facing *the same economic hardship to which the CARES Act responded* and who would be eligible for PPP but for their faith-based organizational and associational decisions."  Affiliate Rules for Paycheck Protection Program, 85 Fed. Reg. at 20,817, 20,819 (Apr. 15, 2020) (to be codified at 13 C.F.R. pt. 121) (emphasis added).  Similarly, no compelling interest exists to treat differently businesses owned by persons with criminal records.  There is simply no compelling interest in denying emergency assistance to a business owner who has turned his life around and faces

the same economic hardship as other small businesses, regardless of whether the business owner remains on probation or parole.

139.    PPP loans serve the specific purpose of saving small businesses during an unprecedented economic crisis.  Congress made PPP loans fully forgivable and instructed SBA to administer PPP loans expeditiously.  Whatever reasons SBA thinks exist to exclude categories of businesses from other types of 7(a) loans are inapposite here.

140.    As a direct and proximate result of the invalid portions of the Interim Final Rule, the Defendants and their delegatee have caused Plaintiffs and their employees irreparable harm including but not limited to financial ruin and business ruination.

141.    The Plaintiffs have been damaged and will continue to be damaged by Defendants' conduct.  No adequate remedy at law is available that could compensate Plaintiffs for their damages.

142.    The Plaintiffs are entitled to declaratory and injunctive relief invalidating and restraining enforcement of the Criminal History Rules of the Interim Final Rule.

### COUNT III: UNLAWFULLY WITHHELD AGENCY ACTION
### DEFENDANTS FAILED TO CARRY OUT A MINISTERIAL DUTY

143.    Plaintiffs reallege and incorporate by reference the allegations contained in their Introductory Statement and paragraphs 1 through 115, as if fully set forth herein.

144.    The Administrative Procedure Act requires that a reviewing court "compel agency action unlawfully withheld or unreasonably delayed[.]"  5 U.S.C. § 706(1).

145.    Relief under § 706(1) "is like the mandamus remedy, 'empowering a court only to compel an agency to perform a ministerial or non-discretionary act or to take action upon a matter, without directing how it shall act.'"  *Vill. of Bald Head Island v. U.S. Army Corps of Engineers*, 714 F.3d 186, 195 (4th Cir. 2013) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (cleaned up)).

146.    The CARES Act directed SBA to administer PPP loans based on the considerations that Congress set out in the law.

147.    Congress did not delegate any discretion to SBA to deem classes of small businesses ineligible for reasons not contained in the CARES Act.

148.    SBA's failure to administer PPP loans for some classes of small businesses—including those excluded by the Criminal History Rule—is an unlawfully withheld agency action.

149.    Plaintiffs are entitled to relief under 5 U.S.C. § 706(1) by way of ordering the Defendants to perform the nondiscretionary act of administering PPP loans according to the text of the CARES Act.

## COUNT IV: MANDAMUS
### THE INDIVIDUAL DEFENDANTS FAILED TO CARRY OUT A MINISTERIAL DUTY

150.    Plaintiffs reallege and incorporate by reference the allegations contained in their Introductory Statement and paragraphs 1 through 115, as if fully set forth herein.

151.    The "ancient remedy" of mandamus will apply in extraordinary circumstances "to compel the fulfillment of a duty which is ministerial, plainly and positively ascertained, and free of doubt." *Grice v. Colvin*, 97 F. Supp. 3d 684, 705 (D. Md. 2015) (citations omitted).

152.    A writ of mandamus is proper when three elements are present: "(1) a clear right in the plaintiff to the relief sought; (2) a clear duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." *Grice*, 97 F. Supp. 3d at 705 (citation omitted).

153.    The second element is satisfied when the defendant's official action is ministerial or nondiscretionary. "A ministerial duty, the performance of which may, in proper cases, be required of the head of a department, by judicial process, is one in respect to which nothing is left to discretion. It is a simple, definite duty, arising under the conditions admitted or proved to exist, and imposed by

law." *City of Columbus v. Trump*, No. CV-18-2364-DKC, 2020 WL 1820074, at *22 (D. Md. Apr. 10, 2020) (quoting *Mississippi v. Johnson*, 71 U.S. 475, 498 (1866)).

154.    One such ministerial duty is dispensing sums of money as directed by Congress. *City of Columbus*, 2020 WL 1820074, at *22 (citing *Kendall v. U.S. ex rel. Stokes*, 37 U.S. (12 Pet.) 524 (1838); *Marbury*, 5 U.S. (1 Cranch) 137).

155.    The equitable writ of mandamus is appropriate in this extraordinary circumstance because Congress directed SBA to administer PPP loans based on the nondiscretionary criteria set forth in the CARES Act.  The Plaintiffs meet that criteria and are entitled to have their loan applications processed like all other applicants who meet the criteria that Congress set.  There is no adequate remedy at law by which the Plaintiffs can compel the Defendants to carry out their statutorily imposed ministerial duty.

156.    The Plaintiffs are entitled to mandamus relief ordering the Defendants to administer and process the Plaintiffs' PPP loan applications as required by the plain terms of the CARES Act, without regard to the unlawful Criminal History Rule.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for the following relief against Defendants:

A.    Declaratory judgment that the Criminal History Rule is contrary to law.

B.    Declaratory judgment that the Criminal History Rule is arbitrary and capricious.

C.    Declaratory judgment that SBA and Administrator Carranza unlawfully withheld agency action through their promulgation and/or application of the Criminal History Rule.

D.    Writs of mandamus ordering the individual Defendants to fulfill their duties to administer PPP loans to *all* business concerns that are eligible under the criteria set out in the CARES Act.

E.      Temporary Restraining Order and Preliminary and Permanent Injunction enjoining the Defendants and their agents from enforcing or using in any fashion or manner whatsoever the Criminal History Rule or 13 C.F.R. § 120.110(n) in the consideration of loan applications made pursuant to the Paycheck Protection Program of the CARES Act.

F.      Temporary Restraining Order and Preliminary and Permanent Injunction that would save the Plaintiffs' place in line for the first-come, first-served funds that Congress allotted for Paycheck Protection Program loans by enjoining the Defendants from dispensing $31,500 of the funds that Congress allotted under the Paycheck Protection Program and Health Care Enhancement Act on April 24, 2020, which amended the CARES Act by increasing the funds available for PPP loans to $659,000,000,000.  Pub. L. No. 116-139, § 101(a)(1), 134 Stat. 620 (2020).

G.      An order requiring Defendants and their agents to notify, as expeditiously as possible, all SBA lending banks to immediately stop using the Criminal History Rule or 13 C.F.R. § 120.110(n) when determining eligibility for Paycheck Protection Program loans, and to fully process all Paycheck Protection Program loan applications without reference to such regulations.

H.      Order the Defendants and their agents and delegates, including lending banks, to grant all Paycheck Protection Program loan applications of the Plaintiffs if they otherwise qualify for such loans based on the criteria set out in the CARES Act.

I.      Order the Defendants and their agents and delegetees, including lending banks, to restore Plaintiff Retail4Real to its place in the application queue as of the time Retail4Real's application for a Paycheck Protection Program loan was submitted on April 8, 2020.

J.      Order the Defendants and their agents and delegatees, including lending banks, to secure Carmen's Corner Store's place in the application queue for a Paycheck Protection Program loan as if Carmen's Corner Store had applied for such a loan as of the date of this Court's order granting a temporary restraining order or preliminary injunction.

K.      An award of costs or attorneys' fees that this Court deems just and proper.

L.      For such other relief as the Court deems just and proper.

Respectfully submitted,

_____/s/_____

Ronald S. Canter
The Law Offices of Ronald S. Canter, LLC
200 A Monroe Street, Suite 104
Rockville, Maryland 20850
(301) 424-7490
(301) 424-7470 (fax)
rcanter@roncanterllc.com
Bar No. 01024

Dated:  June 10, 2020

NEW CIVIL LIBERTIES ALLIANCE

John Vecchione
Senior Litigation Counsel
Jared McClain
Staff Counsel
Jared.McClain@ncla.legal
1225 19th Street NW, Suite 450
Washington, DC 20036
tel.: (202) 869-5210
*Request for Reinstatement & Application for Admission
Pending, Respectively*

*Counsel to Plaintiffs Carmen's Corner Store,
Retail4Real, and Altimont Mark Wilks*

## <u>VERIFICATION</u>

I, Altimont Mark Wilks, the owner of Plaintiff Carmen's Corner Store and Plaintiff Retail4Real, am in a plaintiff in this proceeding.  On behalf of myself and my two businesses, I have read this complaint and hereby verify that the contents are true and correct to the best of my knowledge, information, and belief, this 10th day of June 2020.


_Altimont Wilks_
Altimont Wilks (Jun 10, 2020 09:06 EDT)
_____
Altimont Mark Wilks